**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: ALVARO VASQUEZ-RAMIREZ,

---

ALVARO VASQUEZ-RAMIREZ,
                        *Petitioner,*

            v.

UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF CALIFORNIA,
                        *Respondent,*

UNITED STATES OF AMERICA,
            *Real Party in Interest.*

No. 04-75715

D.C. No.
CR-04-01037-LAB

OPINION

Petition for Writ of Mandamus to the
United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
November 18, 2005—Pasadena, California

Filed April 6, 2006

Before: William C. Canby, Jr., Alex Kozinski and
Eugene E. Siler, Jr.,* Circuit Judges.

Opinion by Judge Kozinski

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

3853

**COUNSEL**

Steven F. Hubachek, Chase Scolnick and Lori B. Schoenberg, Federal Defenders of San Diego, Inc., San Diego, California, for the petitioner.

Michael J. Dowd, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, California, for the respondent.

Carol C. Lam, United States Attorney; Roger W. Haines, Jr., Assistant United States Attorney, Chief, Appellate Section, Criminal Division; and David P. Curnow, Assistant United States Attorney, San Diego, California, for the United States, real party in interest.

**OPINION**

KOZINSKI, Circuit Judge:

We consider whether a district judge may reject a guilty plea that satisfies all of the requirements of Federal Rule of Criminal Procedure 11(b).

**Facts**

Alvaro Vasquez-Ramirez was deported from the United States after having been convicted of an aggravated felony. He then reentered the United States in violation of 8 U.S.C. § 1326 ("Reentry of removed aliens"), a crime carrying a maximum sentence of 20 years. *See* 8 U.S.C. § 1326(b)(2). As

is the practice in the Southern District of California, the government offered Vasquez a "fast-track" disposition: If Vasquez agreed to plead guilty within 60 days, waive his right to an indictment, waive all rights of appeal and collateral attack, and depart the United States following imprisonment, the government would allow him to plead guilty to one felony count and one misdemeanor count of violating 8 U.S.C. § 1325 ("Improper entry by alien"), for a combined maximum prison sentence of 30 months.[1] *See* 8 U.S.C. § 1325(a).

Vasquez agreed to the deal, signed a plea agreement, and was arraigned on an information charging two counts of violating section 1325. But the district court rejected the deal. The government then obtained, apparently as a result of a "mix-up," an indictment charging Vasquez with violating section 1326, but also renewed its fast-track offer. Vasquez again accepted the offer. Pursuant to the renewed agreement, Vasquez would plead guilty to the two counts of violating section 1325 charged in the information, and both parties would recommend that the judge impose the statutory maximum sentence of 30 months. The plea agreement together with Vasquez's criminal history report were submitted to the district court. This time, a different district judge rejected not only the plea agreement, but Vasquez's guilty *plea* itself:

> The court had reviewed the criminal history report. I have reviewed the report—excuse me—the report and recommendation. I reject the Plea Agreement in this case. And accordingly, I am going to give the defendant, Mr. Vasquez, the right to withdraw his plea. Actually, he doesn't need to, because I am not going to accept the plea. I reject it. The criminal history category in this case and the criminal history of the defendant is so high that in good conscience I would not sentence him to 30 months, and I reject

---

[1]We have previously expressed approval of the fast-track program. *See United States* v. *Estrada-Plata*, 57 F.3d 757, 761 (9th Cir. 1995).

the Plea Agreement. I am not going to follow that. I am not going to go along with it. I am not going to dismiss the [section 1326] charge.

Vasquez moved for reconsideration but the district judge declined. When pressed for his reasons, the judge stated that he didn't want to get "mousetrapped" into losing his discretion to impose a sentence longer than 30 months. Vasquez brings a mandamus petition seeking to compel the district judge to accept his guilty plea.[2] He does not challenge the judge's rejection of the plea agreement.

## Merits

**1.** The Supreme Court has emphasized the importance of treating pleas and plea agreements distinctly, *see United States* v. *Hyde*, 520 U.S. 670, 674 (1997) ("Guilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time."), as have we, *see Ellis* v. *United States Dist. Court*, 356 F.3d 1198, 1206 (9th Cir. 2004) (en banc) ("The plain text of Rule 11 compels distinct treatment of the plea agreement and the plea itself, as the Supreme Court concluded in *Hyde*.").

**[1]** The distinction between pleas and plea agreements is codified in Rule 11, which has separate provisions for each. *See* Fed. R. Crim. P. 11(a), (b) (addressing guilty pleas); Fed. R. Crim. P. 11(c) (addressing plea agreements). These provisions not only treat guilty pleas and plea agreements separately, but differently: Although Rule 11(c) explicitly gives judges discretion to reject certain types of plea agreements,[3]

---

[2] Vasquez also filed an interlocutory appeal seeking the same relief, which we dismissed for lack of jurisdiction.

[3] One type of agreement that the court *can* reject is a "charge bargain" like the one at issue in this case. *See* Fed. R. Crim. P. 11(c)(1)(A) ("An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. . . . If the defendant pleads guilty . . . to a lesser or related offense, the plea agreement may specify that an attorney for the government will . . . not bring, or will move to dismiss, other charges . . . ."); Fed. R. Crim. P. 11(c)(3)(A), (c)(5) (giving a court the right to reject a charge bargain of the type specified in Rule 11(c)(1)(A)).

Rule 11(a) does not authorize judges to reject unconditional guilty pleas. *See* Fed. R. Crim. P. 11(a)(1) (requiring the court's consent for nolo contendere pleas, but not for guilty or not-guilty pleas); Fed. R. Crim. P. 11(a)(2) (requiring the court's consent for conditional guilty pleas and nolo contendere pleas only). And Rule 11(b) lists various requirements that must be met "[b]efore the court accepts a plea of guilty,"[4] without giving judges the option of rejecting a plea once these requirements are satisfied.

**[2]** Thus, viewing Rules 11(a) and (b) together, it is clear that a court must accept an unconditional guilty plea, so long as the Rule 11(b) requirements are met. The existence or non-existence of a Rule 11(c) plea agreement is irrelevant to the separate issue of how a defendant chooses to plead.[5]

**2.** We have previously addressed the relationship between plea agreements and guilty pleas. In *Ellis*, we issued a writ of mandamus to a district court that had rejected a plea agreement and *vacated* the defendant's previously entered guilty plea. We held as follows:

> If . . . the court rejects a Rule 11(c)(1)(A) or (C) plea agreement, Rule 11(c)(5) dictates the procedures to be followed:
>
> > [T]he court must do the following on the record and in open court (or, for good cause, in camera):
> >
> > (A) inform the parties that the court rejects the plea agreement;

---

[4]The Rule 11(b) requirements ensure that the plea be knowing, voluntary and intelligent, and that it have a factual basis. There is no dispute that these requirements were satisfied in this case.

[5]Of course, the rejection of a plea agreement does impact the defendant's ability to change his plea. *See* pp. 3859-62 *infra*.

(B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and

(C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

Fed. R. Crim. P. 11(c)(5). Rule 11 thus contemplates that the district court's rejection of a plea agreement allows the defendant, not the court, to make the next decision with respect to the status of the plea—*i.e.*, whether to withdraw the plea and proceed to trial, or persist in the plea and risk a more severe sentence under the Sentencing Guidelines.

. . . .

The only course available for the district court, upon rejecting the plea agreement, is to advise the defendant of his rights, including the right to withdraw the guilty plea. . . . And should the defendant decide to maintain his plea of guilty, the court "may dispose of the case less favorably toward the defendant than the plea agreement contemplated." Fed. R. Crim. P. 11(c)(5)(C) . . . .

When his plea agreement was rejected, it became Ellis's choice whether to: (i) stand by his plea . . . (ii) withdraw his plea and attempt to renegotiate a new plea agreement . . . or (iii) withdraw his plea and take his chances at trial . . . .

*Ellis*, 356 F.3d at 1207-08 (alteration in original).

**[3]** The district judge in this case tried to avoid the strictures of *Ellis* by refusing to accept Vasquez's guilty plea in the first place; thus, he thought, there would be nothing to vacate. But the judge's attempt to distinguish a guilty plea already accepted from one that has only been tendered must fail; as described above, the act of "accepting" a tendered guilty plea is non-discretionary once the Rule 11(b) requirements are met. A tendered guilty plea that meets the Rule 11(b) requirements is effectively the same as a guilty plea that has been accepted, even if the judge doesn't formally "accept" the plea until later. Thus, when the district judge rejected Vasquez's plea agreement, his guilty plea had already been effectively entered; the judge's decision not to "accept" the plea at that point was no different from the *Ellis* judge's decision to vacate an already-accepted plea.

**[4]** The Supreme Court's description of the proper sequence of events accords with our analysis:

> [The Federal Rules of Criminal Procedure] explicitly envision a situation in which the defendant performs his side of the bargain (the guilty plea) *before* the Government is required to perform its side . . . . If the court accepts the agreement and thus the Government's promised performance, then the contemplated agreement is complete and the defendant gets the benefit of his bargain. But if the court rejects the Government's promised performance, then the agreement is terminated and the defendant has the right to back out of his promised performance (the guilty plea), just as a binding contractual duty may be extinguished by the nonoccurrence of a condition subsequent.

*Hyde*, 520 U.S. at 677-78 (emphasis added). Once the district judge rejected Vasquez's plea agreement, he should have given Vasquez the same choices we gave Ellis: "(i) stand by his plea . . . (ii) withdraw his plea and attempt to renegotiate

a new plea agreement . . . or (iii) withdraw his plea and take his chances at trial . . . ." *Ellis*, 356 F.3d at 1208.

**3.** The district judge protests that, were he forced to accept Vasquez's guilty plea, he could impose no more than a 30-month sentence, which he finds inadequate in light of Vasquez's criminal history. He also argues that the parties will be effectuating the very plea agreement he rejected, which recommended a 30-month sentence. The dissent in *Ellis* shared the district judge's concerns:

> The majority states that . . . the judge may still "dispose of the case less favorably toward the defendant than the plea agreement contemplated" under Rule 11(c)(5). . . . I wish that were so. If a defendant pleads to lesser charges with a lesser maximum but open sentencing, and the judge disapproves of the charge bargain after reading the presentence report, the judge is limited, under the majority opinion, to the inadequate conviction, and, if the maximum is too low, the inadequate sentence. Under the majority opinion, if the prosecutor and defense agreed to plead first-degree murder down to a misdemeanor such as careless use of firearms, and, knowing nothing but the stipulation of facts in the plea bargain, the court accepted the plea, there would be nothing the court could do about it when the presentence report revealed what had occurred.

*Ellis*, 356 F.3d at 1232 n.7 (Kleinfeld, J., dissenting).

We rejected this argument in *Ellis*, and we reject it again here, because it misses the point. Now that the plea agreement has been rejected, Vasquez's guilty plea is a naked plea, unencumbered by waivers of his right to appeal or collaterally challenge the proceedings, and unaccompanied by a government promise to drop the section 1326 indictment. There will be no enforceable agreement to which the government can

point should Vasquez decide to appeal or should he refuse to depart the country after serving his sentence, and no agreement to which Vasquez can point should the prosecutor decide to proceed on the indictment. Vasquez is pleading guilty to the section 1325 charges because he admits he committed the crime and, most likely, because he believes the government will not pursue the section 1326 charge.

Should the government indeed decide to drop the section 1326 indictment, it will be exercising classic prosecutorial discretion. It may have any number of reasons for doing so, such as wise allocation of scarce resources, none of which are the district court's business. It is true that the district judge's sentencing discretion will then be capped at the same 30-month sentence the parties recommended in their plea agreement. But that is just happenstance, a function of the parties' decision to recommend the statutory maximum sentence; it doesn't mean the judge's rejection of their plea agreement has been nullified. The district judge will still be free to sentence Vasquez to any term of imprisonment within the statutory range; he will have no less discretion than he would if the government had declined to bring the section 1326 indictment in the first place. The judge's sentencing discretion will be cabined only by the prosecutor's decision regarding which charges to pursue, and by Congress's decision to create a statutory maximum sentence for those charges. A judge has no constitutional role in either of these decisions; one is strictly executive and the other is strictly legislative.[6]

---

[6]The Tenth Circuit has also discussed the impact of charge bargains on a trial judge's sentencing discretion, concluding as we do that district courts should be wary of interfering with prosecutorial discretion:

Though charging decisions implicate executive power, they also implicate the sentencing discretion of district courts. However, the court's sentencing discretion is implicated only as an incidental consequence of the prosecution's exercise of executive discretion. In fact, a court's sentencing discretion is implicated in this situation in precisely the same manner it is implicated by pro-

**[5]** By refusing to accept Vasquez's guilty plea, the district judge is trying to force the government to pursue a charge it does not wish to press. As we held in *Ellis*, this intrudes too far into the executive function:

> The district court viewed the sentence resulting from Ellis's plea bargain as not in the best interest of society, given Ellis's criminal history and the circumstances of the offense charged. This was a judgment properly within the judicial function. It is also a function protected by Rule 11's provision for the rejection of a negotiated plea agreement when the court believes a sentence is too lenient or otherwise not in the public interest. [*United States* v. *Miller*, 722 F.2d 562, 563 (9th Cir. 1983)]. But when the district court made the further decision that the [lesser] charge itself was too lenient, it intruded into the charging decision, a function "generally within the prosecutor's exclusive domain." *Id.* at 565. . . . The district court's decision forced the government to prepare to try Ellis on a charge it did not want to bring . . . .

*Ellis*, 356 F.3d at 1209. Rule 11 does not authorize such an intrusion.

**4.** Our reading of Rule 11 is further supported by Rule 32, which states: "Unless the defendant has consented in writing,

---

secutorial decisions to bring charges in the first place, where prosecutorial discretion is nearly absolute. As such, charge bargains directly and primarily implicate prosecutorial discretion whereas judicial discretion is impacted only secondarily. Thus, while district courts may reject charge bargains in the sound exercise of judicial discretion, concerns relating to the doctrine of separation of powers counsel hesitancy before second-guessing prosecutorial choices.

*United States* v. *Robertson*, 45 F.3d 1423, 1438 (10th Cir. 1995) (citations omitted).

the probation officer must not submit a presentence report to the court or disclose its contents to anyone until the defendant has pleaded guilty or nolo contendere, or has been found guilty." Fed. R. Crim. P. 32(e)(1). The obvious reason for this rule is that the information in a presentence report, such as criminal history and related conduct, is irrelevant to the determination of guilt or innocence, and is only relevant to sentencing.

The Supreme Court has held that:

> Rule 32 is explicit. . . . [Its] language clearly permits the preparation of a presentence report before guilty plea or conviction[,] but it is equally clear that the report must not, under any circumstances, be "submitted to the court" before the defendant pleads guilty or is convicted. Submissions of the report to the court before that point constitutes error of the clearest kind.

> Moreover, the rule must not be taken lightly. Presentence reports are documents which the rule does not make available to the defendant as a matter of right. There are no formal limitations on their contents, and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged. . . . [T]here is no reason for [the judge] to see the document until the occasion to sentence arises, and under the rule he must not do so.

*Gregg* v. *United States*, 394 U.S. 489, 491-92 (1969).

**[6]** The parties in this case submitted a criminal history report to the district court in conjunction with their plea agreement, in compliance with the district judge's "standard practice."[7] But this practice is permissible only if the judge

---

[7]This practice gives the judge the flexibility anticipated by Rule 11(c)(3)(A), which allows a district judge to defer his decision on whether to accept a charge bargain until after he has viewed the presentence report.

adheres to Rule 11 as we have just expounded it, *see* pp. 3859-62 *supra*, and considers himself bound to accept a guilty plea that meets the Rule 11(b) requirements. Otherwise, the criminal history report might improperly influence the determination of guilt (*i.e.*, the acceptance of the guilty plea), contrary to Rule 32(e) as explained in *Gregg*.[8] When parties submit their criminal history report together with their plea agreement, they presume that the only question confronting the judge is whether to accept the agreement. Had Vasquez known that the judge would also be deciding whether to accept his plea, he might not have consented to submitting the report at that time.

**[7]** The district judge wants to have it both ways—he wants to have access to information to which he is only entitled once the defendant is guilty, and then use it retrospectively to decide whether to accept the defendant's guilty plea. This is not allowed under the Rules.

**[8] 5.** Finally, our reading of Rule 11 is consistent with the caselaw of other circuits, many of which have emphasized the broad discretion of district judges to reject plea agreements, *see, e.g.*, *United States* v. *Smith*, 417 F.3d 483, 487 (5th Cir. 2005); *United States* v. *Gamboa*, 166 F.3d 1327, 1330-31 (11th Cir. 1999); *United States* v. *Carrigan*, 778 F.2d 1454, 1462 (10th Cir. 1985); *United States* v. *Bean*, 564 F.2d 700, 702-04 (5th Cir. 1977), but have discussed district judges' discretion to reject naked guilty pleas only when the pleas fail to meet the Rule 11(b) requirements, *see, e.g.*, *United States* v. *Brown*, 331 F.3d 591, 594-95 (8th Cir. 2003) (holding that, in the context of a plea that lacks a factual basis, the "district

---

[8]The district judge argues that Rule 32 is inapplicable here because the criminal history report he viewed is not technically a presentence report. But the information contained in the criminal history report is exactly the type of information that Rule 32(e)(1) is supposed to prevent the judge from viewing prior to the determination of guilt or innocence. We thus treat the criminal history report as the equivalent of a presentence report.

court necessarily possesses broad discretion in deciding to accept or reject [it]" (emphasis and internal quotation marks omitted)); *United States* v. *Gomez-Gomez*, 822 F.2d 1008, 1011 (11th Cir. 1987) ("In order to safeguard the rights of defendants, Rule 11 strictly confines a judge's ability to accept a guilty plea. Proper operation of these safeguards demands that the judge retain broad discretion to set a guilty plea aside, *at least until he has fully discharged his Rule 11 responsibilities*." (emphasis added)); *see also United States* v. *O'Brien*, 601 F.2d 1067, 1069 (9th Cir. 1979) ("A trial court has discretion to accept or reject a guilty plea . . . of one who protests his innocence.").**[9]**

Although we can find no case dealing with precisely the same issue we confront here, where a judge rejects a plea that meets the Rule 11(b) requirements, the D.C. Circuit has come the closest: It found that a district court abused its discretion by rejecting a guilty plea without regard for whether the Rule

---

**[9]** In arguing that he was not required to accept Vasquez's guilty plea, the district judge points to the "well-settled proposition that a defendant has no absolute right . . . to have his guilty plea accepted." *Gomez-Gomez*, 822 F.2d at 1010; *see also Brown*, 331 F.3d at 594 ("There is no absolute right to have a guilty plea accepted." (internal quotation marks omitted)). We agree, of course, that a district court has discretion to reject a guilty plea in certain circumstances, namely when he feels the plea has failed to meet the Rule 11(b) requirements. *See* pp. 3858-59 *supra*.

Further, courts that discuss this "well-settled proposition" often cite to *Santobello* v. *New York*, 404 U.S. 257, 262 (1971). *See, e.g.*, *Brown*, 331 F.3d at 594; *Gomez-Gomez*, 822 F.2d at 1010. But *Santobello* was decided before 1975, when Rule 11 was amended to remove the language that explicitly gave courts the ability to reject a guilty plea. No court seems to have analyzed whether this "well-settled proposition" still applies post-1975.

In any event, the Supreme Court in *Santobello* was reviewing a state court decision, *see* 404 U.S. at 260, and therefore could only have held that there is no *constitutional right* to have a guilty plea accepted. We do not dispute this proposition; we hold only that Rule 11 as currently written does not allow a federal district judge to reject a guilty plea that meets the Rule 11(b) requirements. *See* pp. 3858-59 *supra*.

11(b) requirements had been met, suggesting that a plea rejection must relate to Rule 11(b)'s requirements. *See United States* v. *Maddox*, 48 F.3d 555, 556, 560 (D.C. Cir. 1995) ("While district courts must exercise discretion in deciding whether to accept or reject a guilty plea, that discretion is not unfettered. . . . In this case, the District Court should have conducted an inquiry . . . [and] should have gone on to ensure that all of Rule 11's requirements were satisfied . . . . It failed to do so, and therefore abused its discretion.").

## Remedy

Having concluded that the district court erred in refusing to accept Vasquez's guilty plea, we must decide whether to issue a writ of mandamus. We consider five factors when deciding whether to issue a writ of mandamus: (1) whether the petitioner has any other means of obtaining the relief he desires; (2) whether the petitioner will suffer harm that is not remediable on appeal; (3) whether the district court was clearly erroneous as a matter of law; (4) whether the district court's error is oft repeated, or manifests a blatant disregard of the rules; and (5) whether the district court's order raises new and important issues. *See Bauman* v. *United States Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977). Not all have to be met to warrant a writ of mandamus; we conduct a balancing of the five factors. *See id.* at 655.

**[9]** For the reasons explained above, factors three and five are easily satisfied in this case: The district judge's decision to reject Vasquez's guilty plea is clearly erroneous and raises important issues involving prosecutorial discretion and separation of powers. Factor four is also satisfied to some degree: Although the district judge's error is not oft repeated, it is contrary to the Federal Rules of Criminal Procedure. The only two factors remaining involve whether Vasquez can obtain adequate relief by going to trial on the section 1326 charge— or pleading guilty to it—and then appealing his conviction.

We have already explained why this alternative remedy is inadequate:

> Substantial prejudice would result to [the defendant], the government, and the judicial system by requiring all to proceed through trial . . . before the district court's error could be remedied on direct appeal. . . . The uncorrectable prejudice arising from the district court's refusal to proceed on the [lesser] charge is evident from a consideration of the possible outcome of a trial on the [greater] charge, were we to deny mandamus relief. If the jury acquitted the defendant . . . [he] would go free because he would not, under the district court's ruling, have pleaded guilty to the [lesser] charge, and could not be tried on that charge. Had the jury, instead, returned a verdict of guilt on the [greater] charge . . . [the defendant] would have irreparably suffered the prejudice of the additional, and unnecessary, financial and emotional burden of having to stand trial.

*Ellis*, 356 F.3d at 1210-11 (citing *Brown* v. *Ohio*, 432 U.S. 161, 169 (1977) and *Arizona* v. *Washington*, 434 U.S. 497, 503-05 (1978)). Thus, a writ of mandamus is the appropriate remedy.

[10] Finally, Vasquez argues that the case should be reassigned to a different district judge. The district judge who denied Vasquez's guilty plea has already viewed Vasquez's criminal history report and has expressed strong views about its contents. Further, the judge has told the parties that he will not grant any motion the government may file to dismiss the section 1326 indictment, even though he would likely have no basis for denying such a motion. *See* Fed. R. Crim. P. 48(a) (requiring the government to obtain "leave of court" before dismissing an indictment); *United States* v. *Garcia-Valenzuela*, 232 F.3d 1003, 1008 (9th Cir. 2000) (limiting the court's discretion to deny a Rule 48 motion only to situations

in which "the motion [is] clearly contrary to manifest public interest" (internal quotation marks omitted)). Once again, *Ellis* controls:

> The district judge has read the presentence report and has expressed strong views on its contents. . . . [T]o preserve the appearance of justice, and consistent with the purposes of Rule 32, we conclude reassignment is appropriate. . . . Therefore, on remand, the case shall be reassigned to a different district judge.

*Ellis*, 356 F.3d at 1211.

\* \* \*

[11] A district judge retains broad discretion to sentence a defendant to any term of imprisonment within the statutory range set by Congress, for the crime the prosecutor has chosen to pursue. *See United States* v. *Booker*, 125 S. Ct. 738, 750 (2005). But the judge oversteps his bounds when he forces the prosecutor to pursue charges the prosecutor would rather not, just because the judge disagrees with the sentencing range to which he would otherwise be limited. Once a prosecutor brings charges against a defendant, Rule 11 requires the judge to accept the defendant's guilty plea to those charges, provided the plea meets the requirements of Rule 11(b). It matters not that the judge feels the prosecutor's charging decision was too aggressive or too lenient.

The petition for mandamus is **GRANTED**. Respondent shall order the case transferred to another district judge, to be drawn at random by the clerk of the district court, and the district judge to whom the case is transferred shall conduct further proceedings consistent with our opinion.