**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee*,

v.

VICTOR MANUEL VALENZUELA-
ARISQUETA, AKA Victor
Valenzuela-Arisqueta,
              *Defendant-Appellant*.

No. 12-10596

D.C. No.
4:12-cr-01407-
JGZ-HCE-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted
June 12, 2013—San Francisco, California

Filed August 1, 2013

Before: Mary M. Schroeder, Kenneth F. Ripple[*], and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

---

[*] The Honorable Kenneth F. Ripple, Senior Circuit Judge for the U.S.
Court of Appeals for the Seventh Circuit, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's rejection of a defendant's guilty plea to illegal reentry in violation of 8 U.S.C. § 1326.

The panel determined that the underlying premise for the defendant's insistence that the district court accept his plea – that the maximum sentence under the indictment was two years' incarceration – is wrong. The panel observed that this court's prior opinions have rejected the defendant's assertions that in order to subject him to a possible 20-year maximum sentence under 8 U.S.C. § 1326(b)(2), the indictment must set forth the enhancement and mention the defendant's underlying conviction.

The panel held that the district court properly rejected the defendant's guilty plea under Fed. R. Crim. P. 11, where he had not been informed that he faced a possible sentence of 20 years, and properly offered him the choice of again pleading guilty or proceeding to trial. The panel explained that if jeopardy attached when the magistrate judge accepted the defendant's guilty plea, it did not terminate with the rejection of his plea, as he retained all rights, and his constitutional right not to be subjected to double jeopardy has not been violated.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that the defendant's double jeopardy claim barely met the threshold of "colorable" to support jurisdiction over this interlocutory appeal, where this court had not clearly reconciled its opinions in *Garcia-Aguilar v. United States District Court*, 535 F.3d 1021 (9th Cir. 2008), *United States v. Covian-Sandoval*, 462 F.3d 1090 (9th Cir. 2006), and *United States v. Mendoza-Zaragoza*, 567 F.3d 431 (9th Cir. 2009); and where the procedures set forth in *Ellis v. District Court*, 356 F.3d 1198 (9th Cir. 2004) (en banc), merit reiteration. The panel clarified that this opinion drains the color from any future attempt to seek an interlocutory appeal from a similar rejection of a guilty plea.

---

## COUNSEL

Francisco León, Tucson, Arizona, for Defendant-Appellant.

John S. Leonardo, United States Attorney, Robert L. Miskell, and Matthew C. Cassell (argued), Assistant United States Attorneys, Tucson, Arizona for Plaintiff-Appellee.

---

## OPINION

CALLAHAN, Circuit Judge:

Victor Manuel Valenzuela-Arisquesta ("Valenzuela") appeals from the district court's rejection of his guilty plea to illegal reentry into the country in violation of 8 U.S.C. § 1326. He asserts that the rejection of his plea violates his constitutional right against double jeopardy. We determine that the underlying premise for Valenzuela's insistence that

the district court accept his plea – that the maximum sentence under the indictment was two years' incarceration – is wrong. Furthermore, because Valenzuela was not informed of the possible 20-year sentence, the district court properly rejected his guilty plea and allowed Valenzuela the option of again pleading guilty to the indictment or standing trial. Because the propriety of the district court's ruling was arguably not clear from our precedent, Valenzuela's double jeopardy argument was "colorable," *see United States v. Zone*, 403 F.3d 1101, 1104 (9th Cir. 2005),  and we have jurisdiction over his appeal. However, our decision today clarifies that future similar rejections of guilty pleas will not be subject to interlocutory appeals.

# I

Valenzuela was arrested on May 28, 2012, near Lukesville, Arizona, and charged by complaint with illegal reentry after deportation in violation of 8 U.S.C. § 1326. The grand jury subsequently returned an indictment against Valenzuela charging him with violating § 1326. Valenzuela entered into a written plea agreement and the court scheduled a change of plea hearing. The agreement stated that it was "conditioned upon the defendant having no felony, aggravated felony, or crime of violence convictions," and provided that if such convictions were discovered, "the government shall have the right to withdraw from this agreement."

Valenzuela appeared before a magistrate judge and was informed that he faced a maximum sentence of two years. Valenzuela pled guilty to: (a) being an alien, (b) having been previously removed from the United States, (c) voluntarily reentering the United States, and (d) failing to obtain the

consent of the Attorney General to reenter the United States. The magistrate judge recommended that the guilty plea be accepted. *See* 28 U.S.C. § 636(b)(1).

Within three weeks of the plea hearing, the government submitted a motion to withdraw from the plea agreement because it had received documents verifying that, in January 2004, Valenzuela had pled guilty to the charge of conspiracy to transport illegal aliens in violation of 8 U.S.C. § 1324. Valenzuela opposed the government's motion to withdraw, and argued that even if the government were allowed to withdraw from the agreement, the district court should still accept his plea. The government responded that the court should: (1) allow it to withdraw from the plea agreement; (2) advise Valenzuela that if he persisted in his guilty plea, he may face a sentencing enhancement; and (3) allow Valenzuela to withdraw his guilty plea.

The underlying issue was whether Valenzuela, in light of his prior conviction, faced the possibility of a maximum enhanced sentence of 20 years' incarceration under § 1326(b)(2).[1] Valenzuela argued that he had only been

---

[1] 8 U.S.C. § 1326 reads, in relevant part:

(a) In general

Subject to subsection (b) of this section, any alien who–

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his

charged under § 1326(a) and accordingly, faced a maximum sentence of two years. The government responded that § 1326(b) provides for different maximum sentencing penalties for violations of § 1326(a) depending on the defendant's criminal conviction history. It further asserted that because the enhancements are based on prior convictions, a court has the authority to enhance the sentence even if the

---

reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Criminal penalties for reentry of certain removed aliens

Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection –

(1) whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both.

prior conviction and the possible enhancement are not set forth in the indictment.

At the hearing on the motion to withdraw, the district court agreed with the government and issued an order: (a) granting the government's motion to withdraw from the plea agreement; (b) denying Valenzuela's motion for an order accepting his guilty plea; (c) advising Valenzuela that he had seven days in which to withdraw from his guilty plea; and (d) continuing sentencing for a month. When Valenzuela did not withdraw his guilty plea, the district issued an order accepting the guilty plea and reaffirming the sentencing date.

A status hearing was held on November 8, 2012. The district court expressed concern that the guilty plea taken by the magistrate judge did not satisfy the requirements of Federal Rule of Criminal Procedure 11 ("Rule 11") because Valenzuela had not been correctly advised of the maximum possible penalty for the offense for which he was charged.[2] The district court rejected the guilty plea over Valenzuela's counsel's objection. The court found that the plea colloquy was defective because "Valenzuela was not apprised of the maximum penalties which is required under Rule 11."

Valenzuela filed a timely notice of appeal from the district court's order.[3]

---

[2] Rule 11(b)(1) states that during the colloquy the district court "must inform the defendant of, and determine that the defendant understands, . . . any maximum possible penalty, including imprisonment, fine, and term of supervised release."

[3] The district court addressed the propriety of the interlocutory appeal, noting that a pretrial order rejecting a claim of double jeopardy may be immediately appealable under the collateral order doctrine, citing *United*

## II

Our review of 8 U.S.C. § 1326 and this court's opinions shows that the indictment against Valenzuela, as issued, allows for an enhanced sentence of up to 20 years. The offense – reentry into the United States without the consent of the Attorney General by an alien who has been previously removed – is set forth in § 1326(a). Although this subsection provides for a sentence of "not more than two years," § 1326(b) provides for enhanced criminal penalties based on a defendant's prior convictions. Specifically, § 1326(b)(1) provides for a prison sentence of not more than 10 years where the alien has been convicted of three or more misdemeanors involving drugs or of certain types of felonies, and § 1326(b)(2) – the subsection at issue here – provides for a prison sentence of not more than 20 years when the alien's "removal was subsequent to a conviction for commission of an aggravated felony."

The record in this case clearly shows that Valenzuela's removal was subsequent to his conviction of an aggravated felony. The criminal complaint states that Valenzuela was removed from the United States on February 12, 2012. Valenzuela's district court conviction for conspiracy to transport illegal aliens is dated January 27, 2004. Thus, by its terms, § 1326(b)(2) applies to Valenzuela. *See United States v. Covian-Sandoval*, 462 F.3d 1090, 1097 (9th Cir. 2006)

---

States v. Lewis, 368 F.3d 1102, 1107 (9th Cir. 2004), as long as the double jeopardy claim is colorable, citing *Zone*, 403 F.3d at 1104. The district court thought the appeal to be colorable, and stayed proceedings after noting that, in a criminal case "[w]here an interlocutory claim is immediately appealable, [the filing of a notice of appeal] divests the district court of jurisdiction to proceed to trial." *See Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992).

("[T]o trigger the increase in the statutory maximum sentence under § 1326(b)(2), an alien must first be convicted of an aggravated felony, then be removed, and then attempt to reenter, in that order.").

Valenzuela contends that § 1326(b)(2) does not apply because he was charged only under § 1326(a). He relies heavily on portions of our opinion in *Garcia-Aguilar v. United States District Court*, 535 F.3d 1021 (9th Cir. 2008). However, a careful reading of *Garcia-Aguilar* and our other opinions reveals that our cases do not require the government to specifically mention a defendant's prior conviction in the indictment.

When *Garcia-Aguilar* notes that *Covian-Sandoval* "explained convincingly how *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),] applies," and comments that in *Covian-Sandoval* "the prior removal on which the enhancement was based was not admitted or proven to the jury," 535 F.3d at 1024, it did not hold that the prior removal had to be included in the indictment. Rather, *Garcia-Aguilar* confirms that in order for a court to impose a § 1326(b) enhancement, the felony conviction must precede the defendant's removal from the country.

In *Covian-Sandoval*, we explained:

> The removal that Covian admitted at trial was in 1997. Because his felony conviction was not until 2002, that removal does not support a sentence enhancement, and there was no mention in the indictment or at trial of any other removal. At sentencing, however, the court found that Covian was removed again in

2004, eight days before his attempted reentry. Because this second removal fell between Covian's felony conviction and his subsequent attempt to reenter the United States, the court issued an enhanced sentence under § 1326(b)(2).

Covian does not challenge the substance of any of these facts. Instead, he argues that, under *Apprendi*, if a specific removal is admitted at trial, an enhanced sentence cannot be triggered under § 1326(b) by a different removal that he did not admit. We agree with Covian, but we again find that relief is not warranted under the high bar of the plain error standard of review.

462 F.3d at 1097.

Although we held that "the sentencing court's reliance on the 2004 removal was plain error under *Apprendi*," *id.*, we also held that Covian bore the burden of raising a reasonable doubt as to his 2004 removal. *Id*. at 1098. We found that "Covian has done nothing to meet his burden of raising a reasonable doubt as to the fact of his 2004 removal," and that "[u]nder the plain error standard, his sentence must therefore stand." *Id*. at 1099.

We further explained:

Under the Supreme Court's decision in *Almendarez-Torres v. United States* [, 523 U.S. 224 (1998)], a judge may enhance a sentence under § 1326(b) for a prior

conviction even if the fact of the conviction was not charged in the indictment, submitted to a jury, or proved beyond a reasonable doubt. *See* 523 U.S. 224 (1998); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 415 (9th Cir. 2000).

Covian argues that the Supreme Court has effectively overruled *Almendarez-Torres*, and, relatedly, that recent Supreme Court decisions create constitutional doubt that should compel us to limit the holding of *Almendarez-Torres* to cases in which the defendant admits the prior conviction during a guilty plea. Covian also argues that *Apprendi* renders unconstitutional the provisions of § 1326 that allow a judge to increase the maximum sentence from two years to twenty. All of these arguments, however, are squarely foreclosed by our precedents.

*Id*. at 1096–97 (footnote and parallel citations omitted).

Any question as to the meaning of *Covian-Sandoval* and *Garcia-Aguilar* was put to rest in *United States v. Mendoza-Zaragoza*, 567 F.3d 431 (9th Cir. 2009). There, we explained that "an indictment will support a 20-year maximum sentence under § 1326(b) if it alleges a removal date, thus enabling a sentencing court to determine whether the conviction predated the defendant's removal to establish the necessary sequence." *Id*. at 436. We reiterated:

In other words, a guilty plea to the indictment can establish the removal date, and the only

other fact needed to enhance the sentence is the date of the felony conviction, which is an express exception to the *Apprendi* rule. *See United States v. Grisel*, 488 F.3d 844, 847 (9th Cir. 2007) (en banc) (holding the date of a prior conviction is part of the "fact" of a prior conviction for *Apprendi* purposes because the date can be found on the document demonstrating the prior conviction).

*Id*.

In sum, our prior opinions have rejected Valenzuela's assertions that the indictment must set forth an enhancement under § 1326(b) and mention Valenzuela's underlying conviction.

## III

The district court properly rejected Valenzuela's guilty plea under Rule 11 and offered him the choice of again pleading guilty or proceeding to trial. Thus, accepting that jeopardy attached when Valenzuela pled guilty before the magistrate judge, because this jeopardy never "terminated," Valenzuela has not been placed in double jeopardy.

In *Ellis v. United States District Court*, 356 F.3d 1198, 1200, 1206 (9th Cir. 2004) (en banc), we explained that jeopardy attaches when a court accepts a guilty plea, but also that a district court has the authority under Rule 11 to reject a plea agreement. Our opinion set forth the procedures to be

followed when a court rejects a plea agreement,[4] and explained:

> When his plea agreement was rejected, it became Ellis's choice whether to: (i) stand by his plea and face a sentence at the highest end of the applicable guidelines range (151 months) or an upward departure to as much as a life term; (ii) withdraw his plea and attempt to renegotiate a new plea agreement without a

---

[4] The court stated that when a plea agreement is rejected:

> [T]he court must do the following on the record and in open court (or, for good cause, in camera):
>
> > (A) inform the parties that the court rejects the plea agreement;
> >
> > (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
> >
> > (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.
>
> Fed. R. Crim. P. 11(c)(5). Rule 11 thus contemplates that the district court's rejection of a plea agreement allows the defendant, not the court, to make the next decision with respect to the status of the plea- *i.e.*, whether to withdraw the plea and proceed to trial, or persist in the plea and risk a more severe sentence under the Sentencing Guidelines.

*Id*. at 1207.

> stipulated sentence ceiling; or (iii) withdraw his plea and take his chances at trial on the first degree murder charge. Nowhere does Rule 11 provide that the district court may dictate this choice.

356 F.3d at 1208 (footnote omitted).

In *United States v. Patterson*, 381 F.3d 859 (9th Cir. 2004), we observed that, "although the district court is free to reject the plea agreement after accepting a guilty plea, it is not free to vacate the plea either on the government's motion or *sua sponte*." *Id*. at 865. However, our cases clarify that a plea need not be accepted if the plea and the procedures do not conform to Rule 11. Indeed, in *Garcia-Aguilar*, we implicitly recognized that the acceptance of a guilty plea must conform to the requirements of Rule 11.[5] 535 F.3d at 1024–25. Similarly, in *In re Vasquez-Ramirez*, we noted that a court "must accept an unconditional guilty plea, so long as the Rule 11(b) requirements are met."[6] 443 F.3d at 695–96.

---

[5] Quoting *In re Vasquez-Ramirez*, 443 F.3d 692, 695–96 (9th Cir. 2006), the opinion states that a district court "must accept an unconditional guilty plea, so long as the Rule 11(b) requirements are met." *Garcia-Aguilar*, 535 F.3d at 1024. The opinion's subsequent explanation that Rule 11 "doesn't require judges to predict the precise maximum penalty at sentencing" but "need only tell defendants the maximum sentence that they could *possibly* face," *id*. at 1025, implicitly recognizes that a plea may be rejected where the defendant was not informed of the maximum possible sentence.

[6] In *Vasquez-Ramirez*, we noted that "our reading of Rule 11 is consistent with the case law of other circuits." 443 F.3d at 699. We quoted the statement in *United States v. Gomez-Gomez*, 822 F.2d 1008, 1011 (11th Cir. 1987), that the "[p]roper operation of these safeguards demands that the judge retain broad discretion to set a guilty plea aside,

Here, the district court correctly determined that the plea colloquy was defective. Valenzuela had not been informed that he faced a possible sentence of 20 years of incarceration. Instead, he was told that the maximum sentence was two years. Thus, when the matter came before the district judge, she correctly determined that "the guilty plea that was entered in this case does not satisfy the requirements of Rule 11 as Mr. Valenzuela was not advised of the maximum penalty for the offense for which he was charged." *See* Fed. R. Crim. P. 11(b)(1)(H) (requiring that during the colloquy the court must inform the defendant of "any maximum possible penalty, including imprisonment, fine, and term of supervised release").

Having properly rejected Valenzuela's plea, the district court proceeded in conformity with Ninth Circuit case law. The court did not force a plea on Valenzuela. Rather, the court, by setting the matter for trial and imposing a new deadline for Valenzuela to plead, followed the procedures set forth in *Ellis*, 356 F.3d at 1207. Valenzuela was given the option of proceeding to trial or pleading guilty knowing that "the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated." *Id*.

If jeopardy attached when the magistrate judge accepted Valenzuela's guilty plea without an adequate Rule 11 colloquy, it did not terminate with the rejection of

---

*at least until he has fully discharged his Rule 11 responsibilities*." (Emphasis added). We also noted that in *United States v. Maddox*, 48 F.3d 555, 556, 560 (D.C. Cir. 1995), the D.C. Circuit "found that a district court abused its discretion by rejecting a guilty plea without regard for whether the Rule 11(b) requirements had been met, suggesting that a plea rejection must relate to Rule 11(b)'s requirements." *Vasquez-Ramirez*, 443 F.3d at 700.

Valenzuela's plea, as he retained all his rights. He continued to have the options of proceeding to trial, pleading guilty, or seeking to negotiate another plea agreement.[7]     Thus, Valenzuela's constitutional right not be subjected to double jeopardy has not been violated.

## IV

There remains the question of whether Valenzuela's double jeopardy claim was nonetheless "colorable." "We will not exercise jurisdiction over [an] interlocutory appeal from the denial of [a] motion to dismiss unless [the] double jeopardy claim is 'colorable.'" *Zone*, 403 F.3d at 1104 (quoting *United States v. Price*, 314 F.3d 417, 420 (9th Cir. 2002)). "We will exercise jurisdiction over an interlocutory appeal of denial of a motion to dismiss on double jeopardy grounds if the double jeopardy claim is colorable." *United States v. Price*, 314 F.3d 417, 420 (9th Cir. 2002) (internal quotation marks and citation omitted).

We conclude that Valenzuela's claim barely meets the threshold of "colorable" because we had not clearly reconciled our opinions in *Garcia-Aguilar, Covian-Sandoval, and Mendoza-Zaragoza*, and because the procedures set forth in *Ellis*, 356 F.3d at 1207, merit reiteration. However, this opinion drains the color from any future attempt to seek an

---

[7] As noted, the initial plea agreement was contingent on Valenzuela not having any prior criminal convictions. Valenzuela does not deny that he was convicted in 2004 of conspiring to transport illegal aliens.

interlocutory appeal from a similar rejection of a guilty plea.[8] The district court's rejection of Valenzuela's guilty plea is **AFFIRMED**.

---

[8] Future defendants may still seek appellate review through a petition for a writ of mandamus, which was the relief sought in *Garcia-Aguilar*, 535 F.3d at 1024, 1026. A petition for a writ of mandamus does not deprive the trial court of jurisdiction, *see Ellis v. U.S. Dist. Court for Western Dist. of Washington (Tacoma)*, 360 F.3d 1022, 1023 (9th Cir. 2004) (en banc) (noting that the "district court does not lose jurisdiction over a case merely because a litigant files an interlocutory petition for an extraordinary writ").